UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| TRAVIS MIDDLETON, et al., | ) | NO. CV 16-5224-SVW (AGR) |
| Plaintiffs, | ) | |
| v. | ) | REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE |
| RICHARD PAN, et al., | ) | |
| Defendants. | ) | |

The court submits this Report and Recommendation to the Honorable Stephen V. Wilson, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order No. 05-07 of the United States District Court for the Central District of California. For the reasons set forth below, the magistrate judge recommends that the Defendants' motions to dismiss be granted and that the First Amended Complaint be dismissed with leave to amend under the terms and conditions set forth below.

**I.**

## **SUMMARY OF PROCEEDINGS**

On August 10, 2016, the remaining Plaintiffs[1] Travis Middleton, Eric Durak, Jade Baxter, Julianna Pearce, Candyce Estave, Denise Michele Derusha, Melissa Christou, Andrea Lewis, Rachil Vincent, Don Demanlevesde, Jessica Haas, Paige Murphy, Lori Strantz, Anwanur Gielow, Lisa Ostendorf, JuliaAnne Whitney, Alice Tropper, Bret Nielsen, Brent Haas, Muriel Rosensweet and Marina Read, proceeding *pro se*, filed a First Amended Complaint ("FAC") against the following remaining two categories of defendants:[2] (1) Legislative Defendants Richard Pan, Win-Li Wang, Martin Jeffrey "Marty" Block, Gerald A. "Jerry" Hill, Holly Mitchell, Catharine Baker, Christina Garcia, Adrin Nazarian, Jim Wood, Ben Allen, Kevin de Leon, Hannah-Beth Jackson, Jeff Stone, Richard Bloom, Bill Quirk, Lorena Gonzalez, Reginald Jones-Sawyer, Isadore Hall, Mark Leno, Bob Wieckowski, David Chiu, Evan Low, Anthony Rendon, Jim Beall, Robert Hertzberg, Mike McGuire, Lois Wolk, Bruce Wolk, Jim Cooper and Mark Stone; and (2) State Defendants Governor Brown, Ann Gust and the State of California.

On October 26, 2016, the Legislative Defendants and State Defendants filed motions to dismiss the FAC. (Dkt. No. 103, 105.) On November 16, 2016,

---

[1] Five plaintiffs have filed notices of voluntary dismissal. (Dkt. No. 20 (Andy Taft); Dkt. No. 71 (Jackie Kozak); Dkt. No. 73 (Pam Corner); Dkt. No. 74 (Christie Macias); Dkt. No. 93 (Jodie Tiserrand).)

[2] Plaintiffs filed notices of voluntary dismissal without prejudice of the following defendants: Kevin McCarthy and Judy McCarthy (Dkt. No. 102). Plaintiffs have been unable to serve the following defendants: Dan Baker (Dkt. No. 22), Robbie Black (Dkt. No. 23), Cindy Block (Dkt. No. 24), Candace Chen (Dkt. No. 25), Kristen Cooper( Dkt. No. 26), George Eskin (Dkt. No. 27), Douglas Jackson (Dkt. No. 28), Annie Lam (Dkt. No. 29), Sue Lemke (Dkt. No. 30), Erika McGuire (Dkt. No. 31), Diana Nazarian (Dkt. No. 32), Laura L. Quirk (Dkt. No. 33), Kathy Stone (Dkt. No. 34), Jane Wood (Dkt. No. 35), Pat or Pak Lafkas (Dkt. No. 92), Robbie Block (Dkt. No. 120) and Sky Hill (Dkt. No. 121). Plaintiffs previously indicated that they do not intend to pursue defendants who are the subject of "Non Service Reports" filed by Plaintiffs. (Dkt. No. 96.)
It is recommended that the court dismiss all of these defendants without prejudice.

Plaintiffs filed documents entitled "Notice to the Court to Obey Its Oath to the Constitution for the United States of America" and "Plaintiffs' Refusal for Fraud Pursuant to Fed. R. Civ. P. 1(b), UCC 1-103.6."[3] (Dkt. Nos. 110, 112.) On November 29, 2016, the State Defendants filed a reply (Dkt. No. 118) and the Legislative Defendants filed a joinder (Dkt. No. 119). The matter came on for hearing on December 13, 2016 and was taken under submission.

## II.

## FIRST AMENDED COMPLAINT

Plaintiffs object to California's Senate Bill ("SB") 277, which repealed the personal belief exemption ("PBE") to California's immunization requirements for children entering public and private educational and child care facilities in California.

**A. SB 277**

In enacting SB 277, the California Legislature declared that its intent was to provide a "means for the eventual achievement of total immunization of appropriate age groups against the following childhood diseases:

    (1) Diphtheria.

    (2) Hepatitis B.

    (3) Haemophilus infuenzae type b.

    (4) Measles.

    (5) Mumps.

    (6) Pertussis (whooping cough).

    (7) Poliomyelitis.

    (8) Rubella.

---

[3] Plaintiffs also filed a Verified Petition for Writ of Mandamus. (Dkt. No. 111.) The Petition was denied by the District Judge on November 22, 2016. (Dkt. No. 116.)

1  (9) Tetanus.
2  (10) Varicella (chickenpox).
3 Cal. Health & Safety Code § 120325(a)(1)-(10). Under the current version of the
4 law, a student who had a PBE on file before January 1, 2016 is allowed
5 enrollment until the student entrolls in the next "grade span" as defined in the
6 statute. Cal. Health & Safety Code § 120335(g). First time enrollees and
7 students entering the 7th Grade are no longer allowed admission unless they
8 have complied with the vaccination requirements. *Id.* § 120335(g)(3).
9 SB 277 provides for three exemptions to the vaccination requirements: (1)
10 students who have on file "a written statement by a licensed physician to the
11 effect that the physical condition of the child is such, or medical circumstances
12 relating to the child are such, that immunization is not considered safe, indicating
13 the specific nature and probable duration of the medical condition or
14 circumstances, including, but not limited to, family medical history, for which the
15 physician does not recommend immunization," *Id.* § 120370(a); (2) students who
16 are in a home-based private school or enrolled in an independent study program
17 and do not receive classroom-based instruction, *Id.* § 120335(f); and (3) students
18 who qualify for an individualized education program, *Id.* § 120335(h).
19 The FAC attaches Governor Brown's transmittal dated June 30, 2015.
20 (Exh. A to FAC.)

**B. Allegations**

22 Plaintiffs allege that immunizations contain a "toxic list of ingredients"
23 including aluminum, formaldehyde and mercury thimerosol. (FAC at 5, 8-10.)
24 According to Plaintiffs, Defendants have removed "the ability of parents to invoke
25 their natural rights of self-preservation and or opt out of this criminal assault on
26 their children's lives by being coerced, intimidated, and forced into compliance
27 under this dark cloud of medical and political tyranny." (*Id.* at 12.)
28

4

Plaintiffs allege nine claims: (1) violation of RICO (Racketeering Influenced and Corrupt Organizations Act) claim under 18 U.S.C. § 1961, against all Defendants; (2) violation of RICO under 18 U.S.C. § 1962(a), (d), against all defendants; (3) conspiracy to promote the sale and use of biological weapons on California citizens in violation of 18 U.S.C. § 175, against the Legislative Defendants; (4) conspiracy to promote the sale and use of chemical weapons on California citizens in violation of 18 U.S.C. § 178, against Legislative Defendants; (5) violation of 18 U.S.C. § 241 against Legislative Defendants; (6) violation of 18 U.S.C. § 242 against Legislative Defendants; (7) violation of 42 U.S.C. § 1983 against Legislative Defendants; (8) violation of 42 U.S.C. § 1986 against Legislative Defendants; and (9) intentional infliction of emotional distress against all Defendants. Plaintiffs seek damages, declaratory judgment and an injunction against enforcement of SB 277.

## III.

## DISCUSSION

### A.   Fed. R. Civ. P. 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (citations omitted).

[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the

1  elements of a cause of action, supported by mere conclusory statements, do not
2  suffice. *Id.* at 678; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "In
3  sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual
4  content,' and reasonable inferences from that content, must be plausibly
5  suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*,
6  572 F.3d 962, 969 (9th Cir. 2009) (citation omitted).

As a general rule, the court must limit its review to the operative complaint. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). Materials that are the subject of judicial notice and materials submitted as part of the complaint are not "outside" the complaint and may be considered. *Id.*; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). Even if documents are not physically attached to the complaint, they may be considered if their authenticity is uncontested and the complaint necessarily relies on them. *Lee,* 250 F.3d at 688.

A *pro se* complaint is to be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). Before dismissing a *pro se* civil rights complaint for failure to state a claim, the plaintiff should be given a statement of the complaint's deficiencies and an opportunity to cure them unless it is clear the deficiencies cannot be cured by amendment. *Eldridge v. Block*, 832 F.2d 1132, 1135-36 (9th Cir. 1987). Nevertheless, "[u]nder Ninth Circuit case law, district courts are only required to grant leave to amend if a complaint can possibly be saved. Courts are not required to grant leave to amend if a complaint lacks merit entirely." *Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000).

**B. Legislative Immunity**

The claims in the FAC clearly seek to impose liability on the Legislative Defendants and Governor Brown for introducing, sponsoring, voting for, persuading others to vote for or signing into law SB 277.

"[F]ederal, state, and regional legislators are entitled to absolute immunity from civil liability for their legislative activities." *Bogan v. Scott-Harris*, 523 U.S. 44, 46 (1998) (§ 1983 action); *Chappell v. Robbins*, 73 F.3d 918, 920, 924 (9th Cir. 1996) (civil RICO). Legislative immunity is parallel to the immunity provided by the Speech or Debate Clause in the United States Constitution.[4] *Id.* at 920.

"Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." *Bogan*, 523 U.S. at 54. Allegations that legislators had improper purposes or motives do not destroy legislative immunity. *Id.*; *Tenney v. Brandhove*, 341 U.S. 367, 377 (1951); *Chappell*, 73 F.3d at 921 (legislative immunity applies despite allegation that legislator sponsored and pushed legislation because he received bribes).

The acts of introducing, voting for, persuading colleagues to vote for, and signing legislation constitutes legislative activities entitled to absolute immunity. *Bogan*, 523 U.S. at 46, 55-56 (immunity applies regardless of whether officials are members of legislative or executive branch); *Community House, Inc. v. City of Boise*, 623 F.3d 945, 959-60 (9th Cir. 2010); *Single Moms, Inc. v. Montana Power Co.*, 331 F.3d 743, 750 (9th Cir. 2003) (applying legislative immunity to passage of legislation deregulating energy market); *San Pedro Hotel Co., Inc. v. City of Los Angeles*, 159 F.3d 470, 476 (9th Cir. 1998); *Chappell*, 73 F.3d at 921 (sponsoring and pushing for legislation are "quintessential legislative acts"); *see also Gravel v. United States*, 408 U.S. 606, 625 (1972) (legislative acts encompass "deliberative and communicative processes by which Members participate in . . . the consideration and passage or rejection of proposed legislation"; immunity extends to legislative aides and assistants).

---

[4] The Speech or Debate Clause of the United States Constitution provides in pertinent part that senators and representatives are privileged "for any Speech or Debate in either House." Art. I, § 6, Cl. 1; *Scheuer v. Rhodes*, 416 U.S. 232, 240 (1974) ("The Federal Constitution grants absolute immunity to Members of both Houses of the Congress with respect to any speech, debate, vote, report, or action done in session.").

7

Legislative immunity applies to actions for damages and injunctive relief. *Supreme Court of Va. v. Consumers Union of the U.S., Inc.*, 446 U.S. 719, 732-33 (1980); *Schmidt v. Contra Costa Cnty.*, 693 F.3d 1122, 1132 (9th Cir. 2012) (§ 1983).

Legislative immunity also applies to California state law claims. *Id.* at 1138-39 (claims based on California Constitution).

It is recommended that Plaintiffs' claims against all individual Defendants be dismissed. Plaintiffs' injury results from passage of the legislation. Plaintiffs cannot a state a claim upon which relief could be granted because the conduct that caused their injuries is legislative and therefore immune. *See Chappell*, 73 F.3d at 921.

**C. Eleventh Amendment Immunity**

The Eleventh Amendment bars suits in federal court for damages or injunctive relief against California. *Papasan v. Allain*, 478 U.S. 265, 276 (1986); *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 943 (9th Cir. 2013).

Plaintiffs also name Governor Brown. In his official capacity, the Eleventh Amendment bars suits for damages. Under certain circumstances, prospective injunctive relief for federal claims is available against a state official under the *Ex Parte Young* exception.[5] *Id.* at 943. The state official "'"must have some connection with the enforcement of the act"'" that "'must be fairly direct; a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit.'" *Id.* (citations omitted).

---

[5] The *Ex Parte Young* exception does not apply to state claims such as Plaintiffs' ninth claim for intentional infliction of emotional distress.

8

Governor Brown is entitled to Eleventh Amendment immunity because his only connection to SB 277 is his general duty to enforce California law.[6] Defendant Gust, as First Lady, is not alleged to have any connection to the enforcement of SB 277.[7]

**D. Leave to Amend the Complaint**

The FAC seeks an injunction prohibiting enforcement of SB 277 against Plaintiffs or their offspring. (FAC at 66.) This relief is not available against the named defendants for the reasons discussed above.

It is recommended that the complaint be dismissed against the named defendant with prejudice. The question is whether leave to amend is appropriate to give Plaintiffs an opportunity to name the correct defendant(s) and attempt to state viable claims. As discussed above, a *pro se* plaintiff generally should be given a statement of the complaint's deficiencies and an opportunity to cure them by amendment. *Eldridge*, 832 F.2d at 1135-36. Defendants correctly respond that a court need not grant leave to amend when amendment would be futile. *Lopez*, 203 F.3d at 1129. Nevertheless, it is recommended that the court grant leave to amend. In the event Plaintiffs choose to file a First Amended Complaint, the court provides the following guidance.

Plaintiffs allege that SB 277 is unconstitutional. (FAC at 57 ¶ 14.) In an action in the Southern District of California, a group of plaintiffs, represented by counsel, challenged SB 277 on constitutional grounds. *Whitlow v. State of*

---

[6] Plaintiffs' citation to *Scheuer v. Rhodes* is not to the contrary. In that case, the claims were based on the Governor's deployment of the Ohio National Guard on the Kent State campus. 416 U.S. at 235-36. Plaintiffs did not seek prospective injunctive relief. *Id.* at 237-38. As to claims for damages, a state official in his or her individual capacity may argue for qualified immunity. *Brown v. Oregon Dep't of Corr.*, 751 F.3d 983, 989 (9th Cir. 2014).

[7] To the extent Gust is not shielded by Eleventh Amendment immunity, her alleged acts in support of SB 277 would be shielded by the *Noerr* doctrine and the First Amendment. *See Manistee Town Ctr. v. City of Glendale*, 227 F.3d 1090, 1093 (9th Cir. 2000) (lobbying of government protected by *Noerr* doctrine).

9

*California*, CV 16-1715 DMS.[8] The court issued a well reasoned order denying Plaintiffs' motion for a preliminary injunction and the case was subsequently dismissed by the plaintiffs. *Whitlow v. State of California*, 2016 WL 6495512 (S.D. Cal. Aug. 26, 2016). This court finds the reasoning in *Whitlow* persuasive.

**1. Constitutional Challenges**

In *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11 (1905), the Supreme Court addressed a contention that a statute requiring vaccination was unconstitutional on the grounds of "injurious or dangerous effects of vaccination." *Id.* at 23. Jacobson contended that vaccination quite often causes serious and permanent injury to the person vaccinated and sometimes results in death; that vaccine matter is dangerous; and that he had contracted a disease produced by vaccination when he was a child, as did his son. *Id.* at 36. Jacobson argued that "a compulsory vaccination law is unreasonable, arbitrary and oppressive, and, therefore, hostile to the inherent right of every freeman to care for his own body and health in such way as to him seems best; and that the execution of such a law against one who objects to vaccination, no matter for what reason, is nothing short of an assault upon his person." *Id.* at 26. The Court rejected that argument:

> But the liberty secured by the Constitution of the United States to every person within its jurisdiction does not import an absolute right in each person to be, at all times and in all circumstances, wholly freed from restraint. There are manifold restraints to which every person is necessarily subject for the common good. On any other basis organized society could not exist with safety to its members.

---

[8] The defendants in the *Whitlow* case included the Superintendent of the Department of Education in his official capacity, and the director of the Department of Public Health in her official capacity.

10

> Society based on the rule that each one is a law onto himself would soon be confronted with disorder and anarchy. Real liberty for all could not exist under the operation of a principle which recognizes the right of each individual person to use his own, whether in respect of his person or his property, regardless of the injury that may be done to others.

*Id.* The Court concluded that Jacobson could not claim exemption because of his beliefs about the dangers of vaccination. *Id.* at 37. The Court acknowledged that a state may exercise its power "in such circumstances, or by regulations so arbitrary and oppressive in particular cases, as to justify the interference of the courts to prevent wrong and oppression." *Id.* at 38. However, "we are not inclined to hold that the statute establishes the absolute rule that an adult must be vaccinated if it be apparent or can be shown with reasonable certainty that he is not at the time a fit subject of vaccination or that vaccination, by reason of his then condition, would seriously impair his health or probably cause his death. No such case is here presented. It is the case of an adult who, for aught that appears, was himself in perfect health and a fit subject of vaccination." *Id.* at 39.

The Supreme Court addressed a mandatory vaccination law that prevented children from attending school without a certificate of vaccination. *Zucht v. King*, 260 U.S. 174, 175 (1922). The Court noted *Jacobson* had established that "it is within the police power of a State to provide for compulsory vaccination." *Id.* at 176. The Court rejected challenges based on due process. A State could delegate to municipal authorities "to determine under what conditions health regulations shall become operative" and a municipal authority could vest in officials "broad discretion in matters affecting the application and enforcement of a health law." *Id.* Moreover, "in the exercise of the police power reasonable classification may be freely applied and that regulation is not violative of the equal protection clause merely because it is not all-embracing." *Id.* at 177.

11

In *Prince v. Massachusetts*, 321 U.S. 158 (1944), the Supreme Court addressed a defense to a conviction for violation of state child labor laws. The Court noted that a parent "cannot claim freedom from compulsory vaccination for the child more than for himself on religious grounds. The right to practice religion freely does not include liberty to expose the community or the child to communicable disease or the latter to ill health or death." *Id.* at 166-67 (footnotes omitted); *see also Phillips v. City of New York*, 775 F.3d 538, 542-43 (2d Cir.) (per curiam), *cert. denied*, 136 S. Ct. 104 (2015) (due process, free exercise of religion and equal protection); *Workman v. Mingo Cnty. Bd. of Ed.*, 419 Fed. Appx. 348, 356 (4th Cir. 2011) (free exercise of religion, equal protection and substantive due process).

The California Supreme Court rejected a constitutional challenge to a mandatory vaccination law that excluded children who were not vaccinated from enrolling in school. *Abeel v. Clark*, 84 Cal. 226 (1890). The Court concluded that vaccination is within the scope of a state's police power. *Id.* at 230.

The court in *Whitlow* summarized these decisions and noted:

> [A]lthough the decision to eliminate the PBE, which had been in existence for decades, raises principled and spirited religious and conscientious objections by genuinely caring parents and concerned citizens, the wisdom of the Legislature's decision is not for this Court to decide. *Jacobson*, 197 U.S. at 30 [] (stating the existence of medical opinion attaching little or no value to vaccination as a means of preventing spread of smallpox was of no moment; it was for the Legislature, and not the court, to determine the most effective method of protecting the public against disease). The objections and concerns with SB 277 were presented to the Legislature, and it decided to proceed with the law over

> those objections. Whether those objections were valid is not for this Court to decide. Rather, the Court is concerned only with whether the law is constitutional.

*Whitlow*, 2016 WL 6495512 at *4.

### a. Free Exercise of Religion

Plaintiffs in this case argue that the First Amendment protects both religious and personal freedoms. (FAC at 60 ¶ 181.) The *Whitlow* court properly held that personal beliefs, as distinguished from religious beliefs, are not protected by the First Amendment. *Wisconsin v. Yoder*, 406 U.S. 205, 215 (1972) ("A way of life, however virtuous and admirable, may not be interposed as a barrier to reasonable state regulation of education if it is based on purely secular consideration; to have the protection of the Religion Clauses, the claims must be rooted in religious belief.").

Plaintiffs allege that SB 277 requires them "to waive their rights under their deeply held spiritual beliefs and training to comply with SB 277." (FAC at 60 ¶ 181.) The court assumes that this allegation refers to a religious belief. As discussed above, the Supreme Court has stated that "[t]he right to practice religion freely does not include liberty to expose the community or the child to communicable disease or the latter to ill health or death." *Prince*, 321 U.S. at 166-67 (footnote omitted). The Second Circuit has held that "mandatory vaccination as a condition for admission to school does not violate the Free Exercise Clause." *Phillips*, 775 F.3d at 543. Although New York law allows an exemption for parents with genuine and sincere religious beliefs, the *Phillips* court acknowledged that, in this respect, "New York law goes beyond what the Constitution requires." *Id.* The unpublished Fourth Circuit case on which *Phillips* relied held that "the West Virginia statute requiring vaccinations as a condition of admission to school does not unconstitutionally infringe Workman's right to free exercise." *Workman*, 419 Fed. Appx. at 353-54 (collecting cases).

13

Plaintiffs also assert a claim under the California Constitution as a basis for relief under § 1983. (FAC at 60-61 ¶ 182.) To state a claim under § 1983, a plaintiff must allege a violation of "a right secured by the Constitution or laws of the United States." *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006). Moreover, the California Supreme Court reaffirmed *Abeel* in *French v. Davidson*, 143 Cal. 658, 661-62 (1904) (affirming denial of writ of mandate to compel enrollment of children to schools without vaccinations).

### b. Fourth Amendment

The Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." It is not clear how Plaintiffs believe SB 277 violates the Fourth Amendment. To the extent Plaintiffs allege violation of a right to medical privacy, the Supreme Court has held that: "A student's privacy interest is limited in a public school environment where the State is responsible for maintaining discipline, health, and safety. Schoolchildren are routinely required to submit to physical examinations and vaccinations against disease." *Bd. of Ed. v. Earls*, 536 U.S. 822, 830-31 (2002) (upholding school drug testing policy requiring students who participate in competitive extracurricular activities to submit to drug testing).

### c. Due Process

Plaintiffs allege that SB 277 requires them to submit to "unwanted injections of poisons" that constitute "felony assault with intent to do serious harm, including but not limited to maiming and or killing the individual" without due process of law. (FAC at 61-62 ¶ 185.) Plaintiffs assert a right of self defense. (*Id.* at 62 ¶ 186.) As discussed above, Plaintiffs' due process claims are foreclosed by *Zucht*. 260 U.S. at 176 (rejecting due process challenge to exclusion from schools of children who did not have certificates and refused to submit to vaccination); *Phillips*, 775 F.3d at 542-43 (rejecting substantive due process challenge; "Plaintiffs argue that a growing body of scientific evidence

14

1 demonstrates that vaccines cause more harm to society than good, but as
2 *Jacobson* made clear, that is a determination for the legislature, not the individual
3 objectors."); *Workman*, 419 Fed. Appx. at 355-56 (rejecting substantive due
4 process challenge to mandatory vaccination statute); *Whitlow*, 2016 WL 6495512
5 at *7 (rejecting substantive due process challenge to SB 277).

### d. Equal Protection

Plaintiffs allege that SB 277 discriminates against their children "due to the status of their vaccination schedules not their state of health at the time of entering school." (FAC at 63 ¶ 188.) It appears Plaintiffs are attempting to state an equal protection claim.

The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985). Children who are vaccinated are not similarly situated to children who are not vaccinated. *Whitlow*, 2016 WL 6495512 at *6; *see Wright v. Incline Village Gen. Improvement Dist.*, 665 F.3d 1128, 1140 (9th Cir. 2011) ("Evidence of different treatment of unlike groups does not support an equal protection claim."). Plaintiffs have not alleged that children with PBEs are a suspect class and or that the classifications burden a fundamental right. *San Antonio Independent Sch. Dist. v. Rodriguez*, 411 U.S. 1, 35 (1973) ("Education . . . is not among the rights afforded explicit protection under our Federal Constitution. Nor do we find any basis for saying it is implicitly so protected."). Thus, the classifications are subject to rational basis review. *Whitlow*, 2016 WL 6495512 at *6. "[T]here is a rational basis for treating children with PBEs differently from other children: The former are not completely vaccinated, if at all, while the latter are fully vaccinated. Allowing the latter to attend school and excluding the former is rationally related to the State's interest in protecting public health and safety." *Id.*

15

### e. 42 U.S.C. § 1986

Section 1986 imposes liability on a person who knows of an impending violation of § 1985 but neglects or refuses to prevent it. *Karim-Panahi*, 839 F.2d at 626. "A claim can be stated under section 1986 only if the complaint contains a valid claim under section 1985." *Id.*; *see also McCalden v. California Library Ass'n*, 955 F.2d 1214, 1223 (9th Cir. 1990) (same). Plaintiffs' failure to allege a claim under § 1985 is fatal to any claim under § 1986.

### f. Other Amendments

Plaintiffs cannot state a claim under the Ninth Amendment, which "has not been interpreted as independently securing any constitutional rights for purposes of making out a constitutional violation." *Schowengerdt v. United States*, 944 F.2d 483, 490 (9th Cir. 1991); *see also San Diego Cnty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1125 (9th Cir. 1996).

Plaintiffs allege no facts supporting a claim of involuntary servitude under the Thirteenth Amendment.

### g. Criminal Statutes

Plaintiffs assert violations of various criminal statutes. 18 U.S.C. §§ 175, 178, 241, 242. Private individuals may not prosecute others for alleged crimes. As explained succinctly by the First Circuit:

> Not only are we unaware of any authority for permitting a private individual to initiate a criminal prosecution in his own name in a United States District Court, but also to sanction such a procedure would be to provide a means to circumvent the legal safeguards provided for persons accused of crime, such as arrest by an officer on probable cause or pursuant to a warrant, prompt presentment for preliminary examination by a United States Commissioner or other officer empowered to commit persons charged with offenses against the United States, and, in this case, indictment by a grand jury.

*Keenan v. McGrath*, 328 F2d. 610, 611 (1st Cir. 1964).

The Supreme Court has not inferred a private right of action from the existence of a criminal statute. *Central Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164, 190 (1994) ("we have not suggested that a private right of action exists for all injuries caused by violations of criminal prohibitions").

When, as here, the criminal statutes do not expressly provide for a private right of action, the court examines four factors: (1) whether the plaintiff is one of the class for whose especial benefit the statute was enacted; (2) whether Congress explicitly or implicitly indicated an intent to create a private remedy; (3) whether an implied private right of action would be consistent with the statute's underlying purposes; and (4) whether an implied cause of action would be in an area traditionally relegated to state law. *Cort v. Ash*, 422 U.S. 66, 78 (1975).

The "central inquiry remains whether Congress intended to create, either expressly or by implication, a private cause of action." *Touche Ross v. Redington*, 442 U.S. 560, 575 (1979). If Congress did not intend to create a private right of action, a court need not consider the other factors. *Logan v. U.S. Bank NA*, 722 F.3d 1163, 1170-71 (9th Cir. 2013). Plaintiffs have not argued any basis for finding a private right of action under these criminal statutes. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980) (per curiam) (no private right of action under §§ 241-42).

### h. Civil RICO

Plaintiffs allege RICO claims under 18 U.S.C. § 1961 and § 1962(a), (d) based on enactment of SB 277. (FAC at 47 ¶¶ 140-41.) As explained above, Plaintiffs' claims are barred by legislative immunity.

The court is hard pressed to see any way in which Plaintiffs' challenge to SB 277 could plausibly fall within RICO. Section 1961 contains only the definitions. In the event Plaintiffs attempt to amend the RICO claims, Plaintiffs are advised that they must allege injury to their business or property by reason of

a violation of § 1962. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 495-97 (1985). The FAC does not contain allegations of injury to Plaintiffs' business or property.

Section 1962(a) provides that it is unlawful "for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity . . . to use or invest . . . any part of such income . . . in . . . operation of . . . any enterprise." The FAC contains no such allegations. Moreover, under § 1962(a), Plaintiffs must "allege facts tending to show that he or she was injured by the use or investment of racketeering income." *Nugget Hydroelectric, L.P. v. Pacific Gas & Elec. Co.*, 981 F.2d 429, 437 (9th Cir. 1992). Injury from alleged racketeering acts that generated the income is not sufficient. *Id.*

Absent allegations of a viable RICO violation, Plaintiffs' allegations of a conspiracy to violate RICO under § 1962(d) also fail to state a claim. *Sanford v. MemberWorks*, 625 F.3d 550, 559 (9th Cir. 2010).

## IV.

## **RECOMMENDATION**

For the reasons discussed above, it is recommended that the district court issue an order (1) accepting this Report's findings and recommendation; (2) dismissing without prejudice under Fed. R. Civ. P. 4(m) the following defendants: Dan Baker, Robbie Black, Robbie Block, Cindy Block, Candace Chen, Kristen Cooper, George Eskin, Sky Hill, Douglas Jackson, Annie Lam, Sue Lemke, Kevin McCarthy, Judy McCarthy, Erika McGuire, Diana Nazarian, Laura L. Quirk, Kathy Stone, Jane Wood and Pat or Pak Lafkas; (3) granting Defendants' motion to dismiss the First Amended Complaint; (4) dismissing the First Amended

Complaint against the remaining defendants with prejudice; and (5) granting with leave to amend within 30 days after the District Judge's Order.

DATED: December 15, 2016

_____
ALICIA G. ROSENBERG
United States Magistrate Judge